## Case No. 12,774.

### In re SHERWOOD.

[1 N. B. R. 344 (Quarto, 74); 25 Leg. Int. 76; 1 Am. Law T. Rep. Bankr. 47; 6 Phila. 461.] [1]

District Court, E. D. Pennsylvania. 1868.

BANKRUPTCY—REGISTER'S CHARGES—HOW RAISED —ITEMS—BOOKS AND PAPERS—HOW KEPT.

1. A question as to charges of a register in bankruptcy may be raised by an exception, or may. at the request of a party, be certified by the register. The court will not, in all cases, refuse to entertain such a question upon a certificate by the register of his own motion.

[Cited in Re McGrath, Case No. 8,808.]

2. It seems that the register may, besides the charges for attendance, &c., specified in the forty-seventh section of the act of congress [of 1867 (14 Stat. 540)]. and in general order No. 30, make reasonable charges for his additional services in the business of the private sittings preceding the warrant, the business of the first public meeting of creditors or its adjourned sittings, and the business of another public meeting after the application for a discharge.

3. At the last of these public meetings before the register, or at any adjourned session of it. the bankrupt's examination may be finished; and if no assets have been discovered, any business performable under the twenty-seventh and twenty-eighth sections of the act may also be transacted.

4. For all these purposes the notices may be included in the notices for the hearing in court on the bankrupt's application for a discharge. If the business of the meeting before the register is not finished, or the papers are not filed in the clerk's office before the day appointed for the hearing in court. weekly continuances are entered by the clerk, so that the notices may remain in force; and the time for entering opposition is. on the return of the papers. enlarged, for ten days from the next stated weekly session.

5. Services of the register for any of the above mentioned purposes in any one of the counties for which he has been appointed, whether he resides in it or not. are not services under a special order of the court, within the meaning of the forty-seventh section of the act.

6. For his mere attendance, exclusive of any additional services. he is not entitled to more than three dollars per day, unless he should be allowed five dollars for the first day on which he may attend under the order of reference when he does not himself appoint the time.

7. Such an allowance of five dollars cannot be made if he thus attends on the first day in two or more cases. and makes a distinct charge for attendance in each. He cannot then receive

1 [Reprinted from 1 N. B. R. 344 (Quarto, 74), by permission. 2 Am. Law T. Rep. Bankr. 47, contains only a partial report.]

more than three dollars in each, for the same day.

8. The fees and charges of a register, including those for expenses, may fall short of, or may exceed the amount of the deposit of fifty dollars, required by the forty-seventh section of the act to be made in order to secure them. But it seems that in an unopposed case, in which there is no estate, he cannot be allowed his actual travelling and incidental expenses in journeys to and from any county, however remote. within the limits for which he has been appointed, to an amount exceeding any reasonable proportional part of this deposit.

9. Nor can the business in bankruptcy of such a county be postponed until its accumulation may enable him to lighten such charges by distributing them among several cases.

10. The books and papers in a register's office should be as open to inspection at the local seat of justice, as those in the office of the clerk of a court.

The register certifies that in the course of the proceedings the following question arose, to wit:

The bankrupt in this case [Benjamin Sherwood], living at Honesdale, the county seat of Wayne county, filed his petition on the 30th day of July, 1867, and on February 6, 1868, the register certified to the court his conformity to the bankrupt act. Pursuant to directions received, the register held a monthly court in bankruptcy, in Honesdale, travelling thither from Easton, a distance of about 136 miles via Scranton, and about 170 miles via New York City, and back again six (6) times before the completion of the case; occupying from three (3) to six (6) days on each journey—travelling in all about sixteen hundred (1,600) miles, and consuming in all twenty-one and one half days. The labor performed is that of an ordinary unopposed case, and the expense of travelling for the register, as distributed among all cases at Honesdale, is seventeen dollars and forty-five cents ($17.45). In making up the fee bill, the register finds no difficulty as to two items, to wit: For minimum fees in ordinary unopposed cases, $50; for travelling expenses, $17.45. As regards the third item—compensation for the number of days employed—the register asks what sum he is entitled to charge per day, for every day employed in visiting the county seats within his congressional district, under instructions from the court, and by the desire of the bankrupt and his attorney? If the clause in section 47 of the bankrupt act of March 2, 1867, "for every day's service while actually employed under a special order of the court, a sum not exceeding five dollars, to be allowed by the court," comprehends the case, as it seems to the register to do, then he prays the district court to allow him such sum per diem for twenty-one and one half days as may seem just and reasonable. The above case is stated in order to decide fifteen cases now pending in bankruptcy at Honesdale.

The court returned the following answer:

CADWALADER, District Judge. The certificate states no point or matter on which

a party desires an opinion. Nor does the register certify any case or question as having been stated by parties for my opinion. Whether such a certificate is directly authorized by the sixth section of the act of congress, may be doubted. The regular mode of raising a question as to the propriety of charges of the register is by exceptions on the part of the assignee, or, in some cases, on the part of the bankrupt. But where parties may have no disposition to take such exceptions, or the register desires to receive instruction as to his official duty, there is perhaps no objection to his adopting, as he has done here, a course analogous to that prescribed by the sixth section. If so, however, the question submitted should not be decided in his favor unless the parties opposed in interest have been so notified as to afford full opportunity for contestation. As the certificate under the sixth section of the act "may be varied by the judge," I will state in answer the following important preliminary questions: First. Can a register in bankruptcy fulfil the requirements of his official duty by holding stated or occasional monthly sessions, in a county of his district in which he does not reside. on days of his own appointment? Second. Can he fulfil those requirements without having in every county in which he may act within his district, an office always open, attended by himself or by a resident clerk, where the docket, minutes. and papers of every bankruptcy in such county are securely and methodically kept, and are there open every day during the hours of business, to the inspection of those interested? Third. Does any enactment of congress, or general order of the judges of the supreme court, or course of practice in this court, authorize any such charge by a register as "for minimum fees in ordinary unopposed cases, fifty dollars?" These three questions are prefatorily answered in the negative.

As to the first and second, the register cannot fulfil the duties of his appointment for any county in which the business in bankruptcy must wait upon his convenience, or in which he cannot hold sessions whenever the business may require them. or cannot continue them at convenient short intervals, if not from day to day, as long as may be required. Nor can he fulfil the requirements of his official duty, as to any county in which the books and papers are not so open to inspection, at the local seat of justice, as those in the office of the clerk of a court should be.

As to the third question, the act of congress requires, not payment in advance of the sum of fifty dollars, but, on the contrary, the deposit of it as a security. Against this amount are to be charged all the specific amounts earned for services under the forty-seventh section of the act and the thirtieth general order. Some of the registers take so strictly limited a view of their rights, as to

make, I believe, no charge whatever beyond these amounts, for expenditures. Opinions of district judges on this point have, I believe, differed, some of them denying, others doubting, but others admitting, the right to a reasonable allowance for the revision of the papers, and the performance of other duties, requiring the exertion of intellectual effort, and the aid of legal science and experience. I am strongly disposed to make such an allowance, if I can do so without infringing legislative prohibition, express or implied. But such a question cannot be definitely decided ex parte. The allowance, if made, must be measured cautiously. I have as yet had no conception that in any ordinary unopposed case, where travelling expenses have not been incurred, the specific charges and additional allowance can together exceed fifty dollars. Where no assets are to be accounted for, and the creditors are few, the registers have. in some instances, accounted to the assignees for a surplus or balance of the deposit of fifty dollars. Of course this amount may be exceeded by the charges, in cases in which complicated questions concerning proofs or assets arise, or in which the solicitor of the bankrupt is extraordinarily inattentive. I have no present recollection of any peculiar complexity of any case in the county to which the present certificate refers.

The foregoing remarks may serve to introduce the observation, that the services performed by this register under the fifth and other sections of the act of congress have not been rendered under any special order of the court, within the meaning of the provision of the fourty-seventh section of the act. They have, on the contrary, been ordinary services, under its general requirements. I have, however, been disposed to admit a single qualification of this view in the case of the first day's attendance of a petitioning debtor before the register, because the register's attendance on this day is not appointed by himself. but is ordered (and, as I would have said specially ordered), by the court. But other district judges have expressed a contrary opinion, after considering the question more maturely. The point here involved is only the difference between five and three dollars, for attendance on the first day. This point will not require decision, because the register has, I believe, never attended in this county, under such an order, in less than two cases. on the first day. As he will thus be allowed six dollars or more for this day, that is to say, three dollars in each of two or more cases, there can be no sufficient reason for the special allowance, though such reason might have existed if there had been a single case only. For every day's attendance at the seat of justice of this county, in the case of this bankrupt. three dollars will therefore be the proper charge, if allowable under the conditions prescribed by general order 6. . This does not include the days consumed in travelling to and from the county

seat. They will be next considered. The travelling expenses of the register, whether chargeable under the fifth section of the act. or independently of it, appear to have been properly apportioned among the several cases, and should be allowed. He also, as I understand, proposes to charge as to every journey, for two days consumed, one in going and the other in returning, as for days of service rendered in the proceedings. This charge, in addition to the travelling expenses will, if made, be subject to exception. I cannot therefore decide ex parte in favor of it. But my present inclination is to allow it, if it does not exceed six dollars (that is to say three dollars per day), provided the charge of six dollars is, like that of the travelling expenses, averaged among the cases for which the journey was made. As a charge of the full amount in every one of the cases, it cannot be allowed. In this case, its proportion will, if allowed, make a small addition to the item of $17.45.

I have already intimated, under the head of the third preliminary question, that some allowance to a register beyond the payment of his expenses, and for his daily attendances, and of the other items specified in the forty-seventh section of the act, and in the thirtieth general order, may possibly be proper, even in an unopposed case in which the assignee receives no assets. Recurring to this intimation, I will make some explanatory suggestions. In unopposed cases, it is not the course of practice to appoint special commissioners for the performance of occasional incidental or collateral functions, not within the specified official duty of the register. He, nevertheless, performs many such unofficial functions, for which the appointment of a special commissioner would be inconvenient and expensive. This extra work is of such a kind as no person who is not a lawyer could perform. It includes reports, explanatory statements, answers to questions, &c. For such work, a master in chancery, auditor, or commissioner ordinarily receives compensation, beyond his per diem allowances and specific charges. Moreover the register, in at least three stages of an unopposed case in which the petitioner swears and the assignee certifies that there are no assets, must study the case in its general and particular relations. The first stage is that which precedes the issuing of the warrant. The second stage is that of the first public meeting of creditors, and any adjourned sittings of it. In a later stage, there must, for several reasons, be at least one other public meeting of creditors. One reason is that all proofs of debt made before the assignee are necessarily more or less provisional, and that under the act of congress remissness cannot be imputable to a creditor who does not prove his debt at the first meeting, if it is proved at a second meeting. A more important reason, which is twofold, is that, at a private session of the register, the non-existence or hopelessness of

available assets cannot be safely determined, nor can the irresponsibility of the bankrupt, and of the assignee, for the want of assets be definitively ascertained. For the same reasons, and others, the examination of such a bankrupt cannot, with any propriety, be closed otherwise than at a public meeting. In this judicial district, such arrangements under these heads are carried into effect, through the register, that the general and particular notices of the meeting for these purposes really cost nothing. Upon the bankrupt's application for a discharge they are included in the notices for the final hearing in court. Under the useful provision of general order 25, the notices for the transaction, at the same public meeting, of any business under sections 27 and 28 of the act of congress, are likewise thus included. The great importance of this public meeting before the register, prior to the day appointed for the final hearing in court, has appeared in the fact that notwithstanding an interval of many days between them, registers who have diligently prosecuted the business, have, in some cases, been unable to complete it until after the day in court. In such cases, through recorded continuances in court, from week to week, the notices remain in force until the papers have been filed by the register in the clerk's office, when all inconveniences are obviated by an order enlarging the time for objections to the discharge for ten days after the next stated weekly session. The amounts of labor of the register in the primary, and in the ultimate stage, are often inversely proportional to each other; and in some cases, the last examinations have developed important disclosures.[2]

In ordinary unopposed cases of this kind, an additional charge of at least five dollars in every one of the three stages, and, in many cases, of ten dollars in one or more of them, would be very moderate. The question whether it is allowable may, as I have said, be raised by an exception. There would be a dangerous tendency, perhaps, of such charges, if allow-

<hr>

[2] On the 26th December, 1867, the following memoranda were furnished in the form of a circular letter, by the court for the assistance of the registers: "The papers of every bankrupt should, in order to entitle him to his discharge, contain a complete list of his debts and inventory of his estate, a satisfactory exposition of the cause of his insolvency, an account of his losses, with a precise and full statement and explanation of every transfer, disposition, payment, or appropriation, &c., not made in the regular course of his ordinary business for full and valuable consideration, or in the necessary expenses of living of himself and his family, and all other information which may be material as to his business debts or estate. His examination should not be passed without such full disclosure, affirmative and negative, as may be required under each of these heads. As to his debts and his estate, no repetition of the contents of the petition, or of any former additions or corrections of it by way of amendment, will be required. The last examination should, however, state whether any omissions in these respects have occurred. The principal purpose of this examination is to obtain disclosure under the several other heads above mentioned."

ed, towards undue expansion.[3] Justice may, nevertheless, require their measured allowance.

The most embarrassing consideration which the present certificate suggests, appears to be that, in future, this register will not be able, as heretofore, to lighten the burden of his travelling expenses by dividing it among many cases. It would, of course, be impossible to sanction the postponement of a non-resident register's visits to such a remote county until he may, through the accumulation of business, become able so to distribute the charges. From the burden of examinations under the twenty-sixth section of the act, and of other such business, the court might, at his request, relieve him by the occasional special appointment of a resident local commissioner. But in all cases the presence of the register in every one of the three stages which have been mentioned, seems to be indispensable. In many cases he must attend oftener, and in some cases much oftener. If he retains the appointment of this county he cannot expect full reimbursement of his travelling and incidental expenses in all cases. In a case in which there is no expectation of assets, I think that he should not be paid for more than three journeys, though he may make more than three, and that he should not receive more money than twelve dollars for any one journey, though he may expend more money.[4] I trust that he may be able, without injustice to himself, to acquiesce in these restrictions. He is a most useful officer of the court, and highly respected and esteemed. The appointment of a register who resides in this county would not benefit the inhabitants of it otherwise than by reducing the charges and increasing the facility and frequency of recourse to the officer.

---

[3] Where sordid motives would induce such an expansion of the charges, they might no less induce an improper multiplication of meetings if the charges were not allowable. Such motives cannot be imputable to any of the present registers. I do not consider precedents under English tariffs of charges applicable.

[4] So high a charge would probably not be allowed under this head, in the district of any other register.

